**BMS**

**SCANNED**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **MICHAEL J. KELLY, for himself and on behalf of the United States of America** | : | **CIVIL ACTION NO.** |
|  | : |  |
| **Relator** | : | **17    0199** |
|  | : |  |
| **v.** | : | **JURY TRIAL DEMANDED** |
|  | : |  |
| **QMES, LLC d/b/a TRICOUNTY MEDICAL EQUIPMENT & SUPPLY, LLC,** | : | **FILED UNDER SEAL** |
|  | : |  |
| **Defendant** | : |  |

### *QUI TAM* COMPLAINT

### PRELIMINARY STATEMENT

This *qui tam* action is brought by the Relator, Michael J. Kelly, for himself and on behalf of the United States, against QMES, LLC d/b/a Tricounty Medical Equipment & Supply, LLC for submitting many thousands of fraudulent Medicaid claims for medical devices that were never provided. The Relator seeks to recover damages, fines, and other relief arising from violations by Defendant of the False Claims Act, as amended, 31 U.S.C. § 3729, *et seq.*

### PARTIES

1.      The Relator, Michael J. Kelly ("Kelly"), is an adult individual who resides at 445 Maple Pt. Drive Langhorne, Pennsylvania 19047.

2.      The Defendant, QMES, LLC d/b/a Tricounty Medical Equipment & Supply, LLC ("the Defendant") is a for-profit corporation maintaining a place of business located at 122 Mill Road, Phoenixville, Pennsylvania 19460.

3.      At all times material hereto, the Defendant acted by and through its authorized agents, servants, workmen and/or employees, all of whom were acting within the scope of their employment or agency in the course of the business, mission or affairs of the Defendant.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, as well as 31 U.S.C. §§ 3729, 3730(b) and 3732(a).

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and (c), and 31 U.S.C. § 3732(a), in that the Defendant is found and resides in this district, and a substantial part of the events and occurrences giving rise to this action occurred in this district.

6.      Prior to filing this Complaint, the Relator served a copy of same, together with a written disclosure statement required by 31 U.S.C. § 3730(b)(2), upon the United States.

7.      The Relator is the original source of all information on which any factual allegation herein might be deemed based.

## FACTS

### Federal and State Laws Generally

8.      Medical Assistance ("Medicaid") is a federal health insurance program for, *inter alia*, qualifying low income families and individuals, that is jointly funded by federal and state contributions ("Medicaid Funds"). Medicare is the federal health insurance program for people who are 65 or older, certain younger people with disabilities, and people with End-Stage Renal Disease.

9.      The Centers for Medicare & Medicaid Services ("CMS"), a branch of the Department of Health and Human Services ("HHS"), is the federal agency that runs the Medicare Program and monitors Medicaid programs offered by each state.  Pennsylvania participates in

Medicaid, and as part of the Federal government's requirements for participating states, Pennsylvania has adopted a state plan ("State Plan") that outlines the scope of how its Medicaid program will be run, and ensures that its Medicaid program complies with Chapter 7, Title XIX of the Social Security Act (42 U.S.C. §§ 1396, *et seq.*) and applicable Federal regulations (42 C.F.R., Ch. 4).

10.     Pursuant to the State Plan, Pennsylvania's Medicaid program is administered by the Pennsylvania Department of Public Welfare ("DPW") in accordance with Article IV of the Public Welfare Code (62 PA. STAT. §§ 401, *et seq.*) and the Medical Assistance Manual (55 Pa. Code, Pt. III).

11.     All relevant Federal and Pennsylvania statutes and regulations are collectively referred to herein as "the Regulations."

12.     Pursuant to the Regulations, only qualified, approved "providers" of medical care, treatment and/or services are eligible to seek payment and/or reimbursement from Medicaid Funds.

13.     The Regulations require that providers be truthful in submitting claims for reimbursement from Medicaid and Medicare Funds as a precondition for participation.

14.     As described more fully below, the Defendant has at all relevant times been a "provider" within the meaning of the Regulations, and the Regulations are applicable to the Defendant.

### Prohibition on Making False Statements

15.     In an effort to combat Medicaid and Medicare fraud and abuse, the Regulations have, at all relevant times, imposed obligations on providers, including a requirement that when a provider submits a claim for payment and/or reimbursement from Medicaid or Medicare Funds

in connection with the furnishing of medical care, treatment and/or services for a recipient, the provider must certify as a condition and prerequisite to receiving payment and/or reimbursement that the information supplied in the claim is true and accurate. *See e.g.*, 42 U.S.C. § 1320a-7b(a)(1); 42 C.F.R. §§ 455.18, 455.19 and 495.368.

16.     In addition, the Regulations have at all relevant times required that providers who discover any material omission or errors in claims submitted to Medicare, Medicaid or other Federal health care program must disclose those omissions or errors to the Government. *See e.g.*, 42 U.S.C. § 1320a-7b(a)(3).

### The Nature of Defendant's Business

17.     QMES, LLC ("QMES") is a privately held durable medical equipment and supply company. It provides a variety of services to both the general public and healthcare institutions throughout the mid-Atlantic states, including but not limited to: Pennsylvania, New Jersey, New York, Maryland and Delaware.  It concentrates its business on home care equipment for those suffering from breathing conditions, including, but not limited to, COPD and Sleep Apnea.

18.     Tricounty Medical Equipment & Supply, LLC is a wholly owned subsidiary of QMES.

### The Relator's Employment History

19.     The Relator has been employed by the Defendant from in or about May 2011 through the present.

20.     By way of background, prior to commencing his employment with the Defendant, the Relator possessed over thirty (30) years broad-based experience in directing and overseeing governmental and commercial payor relations, including reimbursement, claims submission, coding of claims and contract management.

21.     During the course of his employment, the Relator has held the position of Director

of Business Development. At all times, he maintained a satisfactory job performance rating in

that capacity and did not receive any negative feedback regarding same.

22.     Over the course of his employment with the Defendant, the Relator developed and

managed crucial business relations which led to profitable and long term relationships.

23.     In connection with the performance of his job duties, the Relator was responsible

for all payor-related oversight (governmental as well as commercial payors) as it related to

claims submission, claims payments, as well as other contract related activities, including audits

undertaken by all payment sources.

## The Defendant Makes False Claims

24.     On or about June 24, 2016, the Relator learned that Defendant had engaged in a

pattern of up-coding for COPD and Sleep Apnea patients for a time period in excess of three (3)

years.  Specifically, the Defendant had billed Medicare for ventilators when it was in fact

providing BiPAP devices to the patients.

25.     On said date, Mark Sargent ("Sargent"), Manager of High Tech Services,

contacted the Relator and advised him that he had discovered the aforesaid up-coding practice.

Further, Sargent informed the Relator that Tara Woodruff Dukes ("Dukes"), Director of Clinical

Services, and Wendy Russalesi ("Russalesi"), Compliance Officer, directed him to keep this

information "internal".

26.     In an effort to ascertain more information, the Relator approached Russalesi later

on the same date. Russalesi advised the Relator that, despite the Defendant's knowledge of this

issue, the up-coding had not been reported to Medicare. In response, the Relator stated his belief

that the Defendant should self-report the false claims to all payors affected, including the

Medicare and Medicaid plans.

27.    On or about June 27, 2016, the Relator met with Dukes and Sargent. During said

meeting, Dukes informed the Relator that Sargent and Dean Gvodas ("Gvodas"), Director of

Operations, had directed her to continue improperly billing for those patients who had already

been authorized to receive treatment from a particular device using the incorrect codes. Dukes

also told the Relator that Gvodas, Luke McGee ("McGee"), QMES Chief Executive Officer,

John Gvodas, Jr. ("Gvodas, Jr."), Chief Executive Officer of South Division, and Joshua Parnes

("Parnes"), Chief Executive Officer of New Jersey and New York Divisions, had instructed her

not to notify the payors. In response, the Relator reiterated his belief that the Defendant should

self-report the false claims to all payors affected, including the Medicare and Medicaid plans.

28.    As a result of the up-coding from BiPAP (E0601) to Ventilators (E0466

(noninvasive) and E0465 (invasive)), the Defendant billed Medicare an extra $3,500 per month

per case. The Relator estimates that the Defendant fraudulently billed for over 57 cases per

month for a period of at least 3 years. As a result of the up-coding from BiPAP (E0601) to

Ventilators (E0466 (noninvasive) and E0465 (invasive)), the Defendant billed managed

Medicare and Medicaid cases an extra $4,500 per month per case. The Relator estimates that the

Defendant fraudulently billed for over 42 cases per month for a period of at least 3 years.

29.    Furthermore, upon information and belief, the Defendant falsified patient medical

records to justify the fraudulent up-coding.

30.    On or about June 28, 2016, the Relator recommended to Russalesi that the

Defendant disclose the up-coding to the payors. In response, Russalesi stated that she was

directed by McGee, Gvodas Jr. and Parnes not to disclose the issue.

31.    On or about June 20, 2016, the Relator learned that the Defendant had inadvertently produced patient charts to a managed medicare plan, Keystone First, which contained evidence of the Defendant's illegal up-coding. Russalesi asked the Relator to contact Keystone First and fraudulently inform them that the charts were sent in error and that they should discard the same. Despite Russalesi's instructions, the Relator did not obey her directive and subsequently restated his belief that the Defendant should self report.

32.    Between on or about July 8, 2016 and on or about September 8, 2016, the Relator repeatedly informed Russalesi and Sargent of his belief that the Defendant should self report. At all times, Russalesi and Sargent directed the Relator to "let it go" and maintained that the Defendant had decided not to correct the up-coding.

33.    On or about September 15, 2016, Gvodas Jr. terminated the Relator's employment with Defendant, effective December 31, 2016, in retaliation for his repeated demands that the Defendant report its false claims to the government.

## COUNT I
### Violations of the FCA Based upon Improper Billing Practices

34.    Relator incorporates by reference each of the paragraphs of this Complaint as though fully set forth at length herein.

35.    Defendant violated the False Claims Act, as amended, 31 U.S.C. § 3729, *et seq.*, ("FCA"), by engaging and participating in, approving and/or authorizing Improper Billing Practices.

36.    Defendant engaged and participated in, approved and/or authorized the Improper Billing Practices, notwithstanding its said certifications relating to its obligation to comply with the relevant Medicaid Regulations.

37.     In engaging and participating in, approving and/or authorizing the Improper Billing Practices, Defendant knowingly presented and/or caused to be presented claims for payment or approval that were false and/or fraudulent, resulting in Defendant receiving payments and/or reimbursements from Medicaid Funds to which Defendant was not entitled.

38.     In engaging and participating in, approving and/or authorizing the Improper Billing Practices, Defendant made, used and/or caused to be made or used, false records and/or statements that were material to claims for payment or approval that were false and/or fraudulent, resulting in Defendant receiving payments and/or reimbursements from Medicaid Funds to which Defendant was not entitled.

39.     Defendant engaged and participated in, approved and/or authorized the Improper Billing Practices with actual knowledge that the information Defendant presented and submitted to obtain the said payments and/or reimbursements from Medicaid Funds were false and/or fraudulent.

40.     In the alternative, Defendant engaged and participated in, approved and/or authorized the Improper Billing Practices with deliberate ignorance of the truth or falsity of the false and/or fraudulent information Defendant presented and submitted to obtain the said payments and/or reimbursements from Medicaid Funds.

41.     In the alternative, Defendant engaged and participated in, approved and/or authorized the Improper Billing Practices in reckless disregard of the truth or falsity the false and/or fraudulent information Defendant presented and submitted to obtain the said payments and/or reimbursements from Medicaid Funds.

42.    On information and belief, Defendant has failed to report or return the improper payments and/or reimbursements Defendant has received from Medicaid Funds pursuant to the Improper Billing Practices.

43.    The U.S. Government and the public fisc have been harmed as a result of Defendant's Improper Billing Practices.

**COUNT II**
**FCA RETALIATION CLAIM - 31 U.S.C. §3730(h)**

44.    The Relator incorporates by reference all of the averments above, as if set forth fully and at length herein.

45.    At all relevant times, the Relator engaged in Protected Conduct under the FCA (the "Protected Conduct").

46.    The Protected Conduct consisted of lawful acts done in furtherance of a potential or actual qui tam action, efforts to stop violations of the FCA, and repeated demands that the Defendant self report the up-coding.

47.    At all relevant times, the Defendant was aware and had knowledge of the Protected Conduct.

48.    At all relevant times, the Defendant was on notice as a result of the Protected Conduct that the Relator was contemplating filing a qui tam action against the Defendant and/or that there was a distinct possibility of litigation against the Defendant under the FCA.

49.    The Defendant discriminated and retaliated against the Relator because of the Protected Conduct by terminating the Relator's employment.

50.     The Defendant's termination of the Relator's employment was motivated by The Relator's engaging in the Protected Conduct.

51.     As a result of the Defendant's discrimination and retaliation against the Relator in violation of the FCA, the Relator has been and will be caused to suffer a loss of employment, a loss and/or diminution of earnings and earning capacity, a loss of employee benefits, pain and suffering, emotional distress, mental anguish, embarrassment, humiliation, inconvenience, and harm to reputation; and in addition, the Relator is entitled to an award of two times the amount of his back pay.

52.     As a further result of the Defendant's discrimination and retaliation against the Relator in violation of the FCA, the Relator has suffered and will suffer irreparable harm, as a result of which he is entitled to recover equitable and/or injunctive relief to the extent such relief feasible and appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator prays that this Honorable Court grant the following relief:

(a)     Declaring the acts and practices of Defendant, complained of herein, to be in violation of the False Claims Act;

(b)     Entering a judgment against Defendant in an amount equal to three times the amount of damages the U.S. Government has sustained as a result of Defendant's violations of the False Claims Act;

(c)      Entering a judgment against Defendant for civil penalty in the amount of at least $11,000 for each of Defendants' violations of the False Claims Act;

(d)      In the event that the U.S. Government elects to intervene in this *qui tam* action, awarding Relator an amount equal to not less than 15% and not more than 25% of the proceeds recovered from Defendants in this action;

(e)      In the event that the U.S. Government elects not to intervene in this *qui tam* action, awarding Relator an amount equal to not less than 25% and not more than 30% of the proceeds recovered from Defendants in the action;

(f)      Awarding Relator all reasonable expenses incurred in connection with the prosecution of the action;

(g)      Awarding Relator all reasonable attorney's fees and costs incurred in connection with the prosecution of the action;

(h)      Awarding Relator prejudgment interest; and

(i)      Granting any and all additional relief that is just and appropriate.

(j)      Awarding the Relator two times the amount of his lost earnings and/or back pay, together with interest on the award;

(k)      Awarding the Relator the full value of all employee benefits lost;

(l)      Awarding the Relator front or prospective pay as an alternative to reinstatement;

(m)     Awarding the Relator special and/or compensatory damages for pain and suffering, emotional distress, mental anguish, embarrassment, humiliation, inconvenience,  and harm to reputation;

(n)     Awarding the Relator litigation costs and attorney's fees; and

(o)     Awarding prejudgment and postjudgment interest to the Relator.


Respectfully submitted,


SIDNEY L. GOLD & ASSOCIATES, P.C.

/s/Sidney L. Gold, Esquire SG1387

SIDNEY L. GOLD, ESQUIRE
I.D. NO.: 21374
1835 Market Street, Ste. 515
Philadelphia, PA 19103
(215) 569-1999
sgold@discrimlaw.net
Attorneys for Relator


DATED:  January 12, 2017

## VERIFICATION

I hereby verify that the statements contained in the attached Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

DATE: 1/4/2017

MICHAEL KELLY, PLAINTIFF

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
MICHAEL J. KELLY, for himself and on behalf of the
United States of America

**DEFENDANTS**
QMS, LLC d/b/a TRICOUNTY MEDICAL EQUIPMENT &
SUPPLY, LLC

**(b)** County of Residence of First Listed Plaintiff    Bucks County
     *(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
     *(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
     THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
SIDNEY L. GOLD, ESQUIRE/ SIDNEY L. GOLD & ASSOC., P.C.
1835 MARKET ST., STE 515, PHILA., PA 19103
TELEPHONE (215) 569-1999   sgold@discrimlaw.net

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

◻ 1 U.S. Government
     Plaintiff

x 3 Federal Question
     *(U.S. Government Not a Party)*

◻ 2 U.S. Government
     Defendant

◻ 4 Diversity
     *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ◻ 1 | Incorporated *or* Principal Place of Business In This State | ◻ 4 | X 4 |
| Citizen of Another State | ◻ 2 | ◻ 2 | Incorporated *and* Principal Place of Business In Another State | ◻ 5 | ◻ 5 |
| Citizen or Subject of a Foreign Country | ◻ 3 | ◻ 3 | Foreign Nation | ◻ 6 | ◻ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ◻ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ◻ 625 Drug Related Seizure of Property 21 USC 881 | ◻ 422 Appeal 28 USC 158 | x 375 False Claims Act |
| ◻ 120 Marine | ◻ 310 Airplane | ◻ 365 Personal Injury - Product Liability | ◻ 690 Other | ◻ 423 Withdrawal 28 USC 157 | ◻ 400 State Reapportionment |
| ◻ 130 Miller Act | ◻ 315 Airplane Product Liability | ◻ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ◻ 410 Antitrust |
| ◻ 140 Negotiable Instrument | ◻ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ◻ 430 Banks and Banking |
| ◻ 150 Recovery of Overpayment & Enforcement of Judgment | ◻ 330 Federal Employers' Liability | | | ◻ 820 Copyrights | ◻ 450 Commerce |
| ◻ 151 Medicare Act | ◻ 340 Marine | ◻ 368 Asbestos Personal Injury Product Liability | | ◻ 830 Patent | ◻ 460 Deportation |
| ◻ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ◻ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ◻ 840 Trademark | ◻ 470 Racketeer Influenced and Corrupt Organizations |
| ◻ 153 Recovery of Overpayment of Veteran's Benefits | ◻ 350 Motor Vehicle | ◻ 370 Other Fraud | ◻ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ◻ 480 Consumer Credit |
| ◻ 160 Stockholders' Suits | ◻ 355 Motor Vehicle Product Liability | ◻ 371 Truth in Lending | ◻ 720 Labor/Mgmt. Relations | ◻ 861 HIA (1395ff) | ◻ 490 Cable/Sat TV |
| ◻ 190 Other Contract | ◻ 360 Other Personal Injury | ◻ 380 Other Personal Property Damage | ◻ 740 Railway Labor Act | ◻ 862 Black Lung (923) | ◻ 850 Securities/Commodities/ Exchange |
| ◻ 195 Contract Product Liability | ◻ 362 Personal Injury - Med. Malpractice | ◻ 385 Property Damage Product Liability | ◻ 751 Family and Medical Leave Act | ◻ 863 DIWC/DIWW (405(g)) | ◻ 890 Other Statutory Actions |
| ◻ 196 Franchise | | | ◻ 790 Other Labor Litigation | ◻ 864 SSID Title XVI | ◻ 891 Agricultural Acts |
| | | | ◻ 791 Empl. Ret. Inc. | ◻ 865 RSI (405(g)) | ◻ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Security Act | **FEDERAL TAX SUITS** | ◻ 895 Freedom of Information Act |
| ◻ 210 Land Condemnation | ◻ 440 Other Civil Rights | ◻ 510 Motions to Vacate Sentence | | ◻ 870 Taxes (U.S. Plaintiff or Defendant) | ◻ 896 Arbitration |
| ◻ 220 Foreclosure | ◻ 441 Voting | **Habeas Corpus:** | | ◻ 871 IRS—Third Party 26 USC 7609 | ◻ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ◻ 230 Rent Lease & Ejectment | ◻ 442 Employment | ◻ 530 General | | | ◻ 950 Constitutionality of State Statutes |
| ◻ 240 Torts to Land | ◻ 443 Housing/ Accommodations | ◻ 535 Death Penalty | **IMMIGRATION** | | |
| ◻ 245 Tort Product Liability | ◻ 445 Amer. w/Disabilities - Employment | ◻ 540 Mandamus & Other | ◻ 462 Naturalization Application | | |
| ◻ 290 All Other Real Property | ◻ 446 Amer. w/Disabilities - Other | ◻ 550 Civil Rights | ◻ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ◻ 448 Education | ◻ 555 Prison Condition | ◻ 465 Other Immigration Actions | | |
| | | ◻ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

x 1 Original
     Proceeding
◻ 2 Removed from
     State Court
◻ 3 Remanded from
     Appellate Court
◻ 4 Reinstated or
     Reopened
◻ 5 Transferred from
     another district
     *(specify)*
◻ 6 Multidistrict
     Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FALSE CLAIMS ACT, 31 U.S.C. SECTION 3729, et seq. (QUI TAM ACTION)
Brief description of cause:
Employment Discrimination

**VII. REQUESTED IN COMPLAINT:**
◻ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23
**DEMAND $** 150,000 in excess
CHECK YES only if demanded in complaint:
**JURY DEMAND:**   x Yes   ◻ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE      DOCKET NUMBER

JAN 12 2017

DATE    January 12, 2017
SIGNATURE OF ATTORNEY OF RECORD
/s/Sidney L. Gold, Esquire    X

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

**UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 445 Maple Pt. Drive, Langhorne, PA 19047

17    0199

Address of Defendant: 122 Mill Road, Phoenixville, PA 19460

Place of Accident, Incident or Transaction: 122 Mill Road, Phoenixville, PA 19460

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No X

Does this case involve multidistrict litigation possibilities?    Yes☐  No X

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No X

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No X

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No X

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No X

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. **Civil Rights**
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. X All other Federal Question Cases
    (Please specify) __**FALSE CLAIMS ACT, QUI TAM ACTION**__

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

**ARBITRATION CERTIFICATION**

Sidney L. Gold, Esquire *(Check Appropriate Category)*
_____, counsel of record do hereby certify:

X Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

X Relief other than monetary damages is sought.

DATE: **January 12, 2017**    /s/Sidney L. Gold, Esquire    21374

Attorney-at-Law    Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __January 12, 2017__    /s/ Sidney L. Gold, Esquire    21374

Attorney-at-Law    Attorney I.D.#

JAN 12 2017

CIV. 609 (5/2012)

*Under Seal*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Michael J. Kelly, for himself and on behalf of the United States of America, | : | CIVIL ACTION |
| Realtor | : | |
| v. | : | NO.    **0199** |
| QMES, LLC d/b/a TRICOUNTY MEDICAL EQUIPMENT & SUPPLY, LLC ,    Defendant | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    (x)

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( )

| | | |
|---|---|---|
| January 12, 2017 | | /s/Sidney L. Gold, Esquire |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| 215.569.1999 | 215.569.3870 | sgold@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JAN 12 2017